# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RYAN WILLIAMS, an individual, | No. 61278-0-II |
| Appellant, | |
| v. | |
| LEROY CHRISTIANSEN, individually and on behalf of the marital community composed of LeRoy and "Jane/John Doe" Christiansen; STEVEN FUESTON, individually and on behalf of the marital community composed of Steven and "Jane/John Doe"; 6TH & D LLC, a Washington Limited Liability Company; 111TH AVE PUYALLUP LLC, a Washington Limited Liability Company; 128TH ST PUYALLUP LLC, a Washington Limited Liability Company; BLUE SKY LAND DEVELOPMENT LLC; a Washington Limited Liability Company; CFW LLC, a Washington Limited Liability Company; CLEAR CREEK PROPERTY LLC, a Washington Limited Liability Company; CW1 LLC, a Washington Limited Liability Company; LR1 LLC, a Washington Limited Liability Company; PIONEER LAND DEVELOPMENT LLC, a Washington Limited Liability Company; PIONEER LAND DEVELOPMENT GROUP LLC, a Washington Limited Liability Company and JOHN DOES 1-20, | UNPUBLISHED OPINION |
| Respondents. | |

CRUSER, J.—Ryan Williams appeals the trial court's order on an evidentiary hearing denying his claims for relief. This case concerns a dispute between the members of the 128th St

Puyallup LLC. Williams, a member of the LLC, argued to the trial court that the contract between LeRoy Christiansen and Steven Fueston (the Managers of the LLC) and Scott Fueston, a contractor performing services for the LLC, violated section 9 of the "Restated Operating Agreement" because it was not in writing, that it violated section 19 of Resated Operating Agreement because it constituted an unwritten amendment to Williams' financial interest in the LLC, and that it allowed the Managers to convert Williams' net profits from the sale of the LLC's property without his consent. The trial court disagreed with Williams and ruled in favor of the Managers.

Williams appeals, raising these same claims of error and additionally arguing that the contract with Scott Fueston was invalid because Scott could not legally perform the services he was hired to perform without violating the real estate broker's act, ch. 18.85 RCW.

The Managers respond that their contract with Scott Fueston did not violate the LLC's record keeping requirements, nor did it violate the Restated Operating Agreement because it did not affect Williams' membership interest in the LLC. With respect to Williams' argument related to the real estate broker's act, the Managers ask us not to consider this claim because Williams raised that issue for the first time in his closing argument and it was not tried with the consent of the Managers.

We disagree with Williams' contentions and affirm.

FACTS

Together, Ryan Williams, LeRoy Christiansen, and Steven Fueston (Members) operate several companies to facilitate their land development projects. Williams formed 128th St Puyallup LLC (LLC) in 2015. The purpose of this company was to "develop land and sell it for profit." Clerk's Papers at 185. The LLC was initially owned one-third by Williams and two-thirds by

LeRoy Christiansen, with the intention that the parties would assign a one-third interest to Steven Fueston at a later date when he resolved his divorce. In 2017, the Members executed a "Restated Operating Agreement" (Operating Agreement) identifying Williams, Christiansen, and Fueston each as managers with equal membership interest in the LLC.

The Operating Agreement provides that "the net profits and net losses of the Limited Liability Company (other than from capital transactions), . . . shall be credited or charged, as the case may be, to the capital accounts of each Member in proportion to the Members' Percentage Interests." Ex. 1 at 6. "[N]et profits" means "the profits or losses of the Limited Liability Company from the conduct of the Limited Liability Company's business, after all expenses incurred in connection therewith have been paid or provided for." *Id.* at 4. "[C]apital transactions" include "the sale of all or any part of the Property or other assets of the Limited Liability Company or interests therein." *Id.*

Decisions "respecting the management, operation and control" of the LLC shall be made by LeRoy Christiansen, Steven Fueston, and Ryan Williams. *Id.* at 8. The Members have an obligation to keep complete and accurate records of the transactions of the LLC "in accordance with generally accepted accounting principles." *Id.* at 7. Section 19 of the Operating Agreement prohibits the Members of the LLC from altering the financial interests of the Members without the vote or consent of all the Members.

Following litigation in 2018, Williams was removed as a manager but maintained his membership interest. The remaining managers of the LLC, Fueston and Christiansen (Managers),

entered into an oral contract with Scott Fueston[1] for project management services related to the LLC. Scott would be compensated with 10 percent of the net profits of the sale of the company's property developments.[2] Between 2021 and 2023, the Managers sold the property associated with the LLC in two phases and paid Scott the compensation owed to him.

Williams filed a motion for summary judgment requesting that he be reimbursed for one third of the funds the Managers paid to Scott for the work he performed for the LLC. Williams argued that the oral contract between the Managers and Scott violated several provisions of the LLC's Operating Agreement. First, Williams argued that the oral contract violated section 9 of the Operating Agreement, which required the Managers to keep accurate records of transactions of the LLC, because the agreement was not in writing. Williams further argued that the contract with Scott violated the Operating Agreement's prohibition on any member assigning or transferring his interest in the LLC, including the net profits of the LLC, without the prior written consent of the other members. In essence, Williams argued that by incurring an obligation to pay people who provided services for value to the LLC, the Managers altered the character and value of Williams' membership interest in the LLC. Williams did not allege that the contract was invalid because it required Scott to illegally provide real estate broker services without the required license in his motion.

---

[1] Because Steven Fueston and Scott Fueston have the same last name, we refer to Scott by his first name for clarity.

[2] Both in the proceedings below and in this court, the parties occasionally use the terms "net proceeds" and "net profits" as though they are interchangeable. They are not. The testimony below established that the agreement between the Managers and Scott was for Scott's compensation to be paid from net profits.

The trial court did not treat the motion as a motion for summary judgment and instead held an evidentiary hearing on the matter akin to a bench trial. At the hearing, Williams' counsel asked Scott a series of questions aimed at establishing that he provided property management services without a real estate brokers license. Most of these questions were objected to by the Managers. For example:

> Q: . . . As the owner of a property management company, are you aware that you need to have a real-estate license to operate such a property management company in the state of Washington?
>
> [Managers' trial counsel]: Objection. That is a legal statement and a legal conclusion in the form of a question.
>
> THE COURT: I'm going to allow the question, if he can answer.
>
> BY [Williams' trial counsel]:
>
> Q: Are you aware, as the owner of a property management company, that you are required in the state of Washington to have a real-estate license--
>
> A. No.
> . . . .
>
> [Managers' trial counsel]: I'm going to object again, Your Honor. He is stating the law, and we do not know for sure if that is the law.
>
> THE COURT: Well, Counsel, your objection is noted. It is cross-examination. He is stating that he is something he is proposing as a question. The witness denied knowledge of something, and there we go.
>
> . . . .
>
> BY [Williams' trial counsel]:
>
> Q: So would it be fair to say you were providing property management services in violation of state law-- . . . when you were providing property management services for 128th Street?
>
> [Managers' trial counsel]: Objection. Calls for him to potentially self-incriminate. . . . This is a legal argument that can be made at the end of the case.

5

Verbatim Rep. of Proc. (VRP) (Aug. 21, 2024) at 117-18, 124-25.

In closing, Williams argued for the first time that the contract between Scott and the Managers was invalid because Scott could not legally perform under the contract based on him not having a real estate broker's license. In response, the Managers' counsel argued, "I want to address momentarily the broker license issue that was brought up for the first time in this hearing in that closing. Nothing contained in their motion says anything about illegal property management, and there hasn't been any illegal property management." VRP (Sept. 25, 2024) at 141. The Managers' counsel further argued that the services provided by Scott were legally provided because they fell into a statutory exception to the brokers requirement. In its oral ruling, the trial court stated that it did not believe "there was enough evidence in order to reach a legal conclusion regarding" Williams' argument that Scott was illegally acting as a real estate broker without a license. *Id.* at 160.

The trial court concluded that Williams failed to meet his burden of proof and denied Williams' motion.

Williams appeals.

## DISCUSSION

### I. VIOLATION OF THE OPERATING AGREEMENT

Williams argues that the trial court erred by concluding that the Managers' contract with Scott did not violate the LLC's Operating Agreement. Specifically, Williams contends that the contract (1) violated section 9 of the Operating Agreement because it was not in writing, (2) constituted an unwritten amendment to Williams' financial interest in the LLC in violation of

section 19 of the Operating Agreement, and (3) no provision of the Operating Agreement gave the Managers authority to convert Williams' net profits from the sale without his consent.

The Managers contend that Williams' arguments fail because Williams mischaracterizes the nature of Scott 's compensation. Rather than being paid a percentage of the net profits of the *LLC* as Williams contends, Scott was paid a percentage of the net profits of the *sale of the property*. Therefore, the Managers argue, the Managers did not interfere with Williams' membership interest. We agree with the Managers.

A. Legal Principles

On appeal of the trial court's decision in a bench trial, we review the trial court's findings of fact for substantial evidence and determine whether those factual findings support the trial court's conclusions of law. *Real Carriage Door Co., Inc. ex rel. Rees v. Rees*, 17 Wn. App. 2d 449, 457, 486 P.3d 955 (2021). We review the trial court's legal conclusions and the trial court's application of the facts to the law de novo. *Id.* "Therefore, we review the trial court's conclusions of law pertaining to contract interpretation de novo." *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712, 334 P.3d 116 (2014). "We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 504, 115 P.3d 262 (2005).

B. Analysis

First, Williams argues that the contract with Scott violated section 9 of the Operating Agreement because it was not in writing. Section 9 of the Operating agreement requires the Members of the LLC to "keep or cause to be kept complete and accurate records and books of

account in which shall be entered each *transaction* of the Limited Liability Company in accordance with generally accepted accounting principles." Ex. 1 at 7 (emphasis added).

Williams fails to demonstrate that the contract to perform services was a "transaction" subject to section 9. Similarly, Williams does not articulate a "generally accepted accounting principle[ ]" or any provision of the Operating Agreement that requires contracts for services to be in writing. *Id.* at 7. To the extent that Williams argues that the actual transaction in which the Managers *paid* Scott violated section 9, the record included the checks paid to Scott for his services. Williams does not explain how these records are insufficient to meet the record keeping requirements of the Operating Agreement. Accordingly, the trial court did not err when it concluded that the Managers did not breach section 9 of the Operating Agreement.

Next, Williams argues that the trial court erred by failing to conclude that the contract constituted an unwritten amendment to Williams' financial interest in the LLC in violation of section 19 of the Operating Agreement. But, as the Managers argue, the contract did not alter Williams' financial interest in the LLC.

Here, the Managers entered into a contract with Scott in which Scott agreed to be compensated for his services in an amount equal to 10 percent of the net profits of the sale of the company's property development. The agreement provides that Williams is entitled to a portion of the net profits of the LLC and recognizes that distributions to the Members are calculated "after all expenses incurred in connection [with the company's business] have been paid or provided for." Ex. 1 at 4. While paying Scott for his service certainly reduces the net profits of the LLC, this method of calculating the fee owed to Scott does not alter Williams' membership share in the LLC. The fact that Scott 's fee was calculated based on the net profits of the sale of the LLC's property

similarly does not alter or reduce the share of the net profits of the LLC that Williams is entitled to.

Finally, Williams argues that no provision of the Operating Agreement gave the Managers authority to convert Williams' net profits from the sale without his consent. But, as discussed above, the Managers did not convert Williams' net profits from the sale. Moreover, hiring Scott to provide project management services for the LLC certainly fell within the Managers' authority to make "all decisions respecting the management, operation and control of the business and affairs of the Limited Liability Company." Ex. 1 at 8. Accordingly, the trial court did not err by failing to conclude that the contract with Scott violated the Operating Agreement.

## II. INVALID CONTRACT

Williams argues that the trial court erred by failing to conclude that the contract was illegal under the real estate brokers act, ch. 18.85 RCW, and WAC 308-124D-215 because Scott, Williams alleged, was operating a real estate firm as defined in RCW 18.85.011(18) but was not licensed to provide real estate brokerage services under RCW 18.85.011(17).

The Managers contend that we should decline to consider the merits of this assignment of error because Williams did not plead this claim below and the issue was not tried with either the implied or express consent of the Managers as required by CR 15(b). We agree with the Managers.

Under CR 15(b), "[w]hen issues not raised by the pleadings are tried by *express or implied consent of the parties*, they shall be treated in all respects as if they had been raised in the pleadings." (Emphasis added.)

> In determining whether the parties impliedly tried an issue, an appellate court will consider the record as a whole, including whether the issue was mentioned before the trial and in opening arguments, the evidence on the issue admitted at the trial,

9

and the legal and factual support for the trial court's conclusions regarding the issue.

*Dewey v. Tacoma Sch. Dist. No. 10*, 95 Wn. App. 18, 26, 974 P.2d 847 (1999).

Here, whether the contract was invalid because Scott did not have a real estate license was not tried either expressly or by implication. Williams did not raise this issue before trial or in opening argument. And the Managers objected repeatedly to the trial court hearing evidence on this unpled claim and to the trial court's consideration of the issue. Furthermore, the trial court made no factual findings on this tardy claim. Williams, as the party that sought a ruling on this claim, neither objected to the trial court's failure to enter findings nor proposed his own factual findings on this issue. Therefore, even if the trial court had not erred in allowing this claim to be tried below, we would still be unable to consider Williams' argument that the trial court erred in failing to find in his favor on this issue.[3]

CONCLUSION

Williams fails to demonstrate that the oral contract violated the LLC's record keeping requirements, the trial court did not err in finding that the contract did not violate the Operating Agreement, and the Managers had authority to enter into the contract without Williams' consent because the contract did not affect Williams' membership interest in the LLC. We decline to review Williams' claim that the Manager's contract with Scott violated the real estate broker's act. Accordingly, we affirm.

---

[3] Williams also does not explain why, even if Scott was undertaking duties in violation of the real estate broker's act or WAC 308-124D-215, the correct remedy is to claw back the funds paid to Scott for his services and redistributing them to the Members. He also cites no authority in support of this contention. Where, as here, "no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

No. 61278-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
CRUSER, J.

We concur:

_____
PRICE, A.C.J.

_____
MAXA, J.